```
                  UNITED STATES DISTRICT COURT
                   MIDDLE DISTRICT OF FLORIDA
                       FORT MYERS DIVISION

ALAN BLAKE ESKRIDGE,

        Petitioner,

v.                                  Case No: 2:12-cv-80-FtM-29CM

SECRETARY,           FLORIDA
DEPARTMENT  OF  CORRECTIONS
and ATTORNEY GENERAL, STATE
OF FLORIDA,

        Respondents.
_____
```

## OPINION AND ORDER

Petitioner Alan Blake Eskridge (hereinafter "Petitioner" or "Eskridge"), a Florida prisoner, initiated this action with the assistance of counsel by filing a 28 U.S.C. § 2254 petition for writ of habeas corpus (Doc. #1) and memorandum of law (Doc. #2) challenging his 2006 second-degree murder conviction entered in the Twentieth Judicial Circuit Court, Collier County, Florida (case no. 04-3718CFA) after a jury trial. The state trial court sentenced Petitioner to twenty years, six months imprisonment.

The Petition and attached memorandum raise the following three grounds challenging Petitioner's conviction:

> (1) The trial court erred by denying Petitioner's motion for judgment of acquittal on the basis that the State failed to provide competent evidence from which the jury could infer guilt to the exclusion of all other inferences in violation of the Fourteenth Amendment;

>    (2) The State failed to satisfy all the elements necessary for a second-degree murder conviction; and
>
>    (3) The sufficiency of the evidence did not support a conviction for second-degree murder.

See Petition; Memorandum at 8-20. Thus, all three issues presented in the federal petition relate to the sufficiency of the evidence in support of the conviction.

Respondent[1] filed a Response opposing the Petition (Doc. #14, Response) and attached supporting exhibits (Doc. #16, Exhs. 1-9) consisting of the record on direct appeal and postconviction pleadings. Respondent argues that the Petition fails to satisfy 28 U.S.C. § 2254 (d) and (e). Petitioner filed a Reply (Doc. #18, Reply). This matter is ripe for review.

## II. Applicable § 2254 Law

**A.  Only Federal Claims are Cognizable**

A federal court may entertain an application for a writ of habeas corpus from a person in state custody pursuant to a state court judgment only on the grounds that the petitioner is in

---

[1] Rule 2(a) of the Rules Governing Section 2254 Cases in United States District Courts provides that applicants in "present custody" seeking habeas relief should name "the state officer having custody of the applicant as respondent." The Supreme Court has made clear that there "is generally only one proper respondent to a given prisoner's habeas petition." Rumsfield v. Padilla, 542 U.S. 426, 435 (2004). This is "'the person with the ability to produce the prisoner's body before the habeas court.'" Id. at 435-436. In this case, the proper Respondent is the Secretary of the Florida Department of Corrections. The Florida Attorney General is dismissed from this action.

custody in violation of the United States Constitution or the laws or treaties of the United States.  28 U.S.C. § 2254(a).  A claimed violation of state law is insufficient to warrant review or relief by a federal court under § 2254.  Pulley v. Harris, 465 U.S. 37, 41 (1984)("A federal court may not issue the writ on the basis of a perceived error of state law."); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); Waddington v. Sarausad, 129 S. Ct. 823, 832 n.5 (2009)(same); Cabberiza v. Moore, 217 F.3d 1329, 1333 (11th Cir. 2000)(§ 2254 not enacted to enforce State-created rights); Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983)(claim involving pure question of state law does not raise issue of constitutional dimension for federal habeas corpus purposes; state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved).

    **B. Cognizable Federal Claims Must Be Fully Exhausted**

Ordinarily, a state prisoner seeking federal habeas relief must first "'exhaus[t] the remedies available in the courts of the State,' 28 U.S.C. § 2254(b)(1)(A), thereby affording those courts 'the first opportunity to address the correct alleged violations of [the] prisoner's federal rights.'"  Walker v. Martin, ____ U.S. ____, 131 S. Ct. 1120, 1127 (2011)(quoting Coleman v. Thompson,

501 U.S. 722, 731 (1991)). This imposes a "total exhaustion" requirement in which all of the federal issues must have first been presented to the state courts. Rhines v. Weber, 544 U.S. 269, 274 (2005). "Exhaustion requires that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process. That is, to properly exhaust a claim, the petitioner must fairly present every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review." Mason v. Allen, 605 F.3d 1114, 1119 (11th Cir. 2010)(citing O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) and Castile v. Peoples, 489 U.S. 346, 351 (1989)).

To fairly present a claim, a petitioner must present the *same* federal claim to the state court that he urges the federal court to consider. A mere citation to the federal constitution in a state court proceeding is insufficient for purposes of exhaustion. Anderson v. Harless, 459 U.S. 4, 7 (1983). A state law claim that "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Duncan v. Henry, 513 U.S. 364, 366 (1995)(per curiam). "'[T]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'" McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005) (quoting Kelley v.

Sec'y for the Dep't of Corr., 377 F.3d 1317, 1343-44 (11th Cir. 2004)).

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001), cert. denied, 534 U.S. 1136 (2002). Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief . . . . ." Smith, 256 F.3d at 1138. A procedural default for failing to exhaust state court remedies will only be excused in two narrow circumstances. First, a petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the asserted error. House v. Bell, 547 U.S. 518, 536-37 (2006); Mize v. Hall, 532 F.3d 1184, 1190 (11th Cir. 2008).

**C. Review Under the AEDPA**

Petitioner filed his Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), and therefore post-AEDPA law governs this action. Abdul-Kabir v. Quarterman, 550 U.S. 233, 246 (2007); Penry v. Johnson, 532 U.S. 782, 792 (2001); Davis v. Jones, 506 F.3d 1325, 1331, n.9 (11th Cir. 2007).

Under the AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Cullen v. Pinholster, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011).  "This is a difficult to meet, and highly deferential standard for evaluating state-court rulings, which demands that the state-court decisions be given the benefit of the doubt."  Id. (internal quotations and citations omitted).  See also Harrington v. Richter, ___ U.S. ___, 131 S. Ct. 770, 786 (2011) (pointing out that "if [§ 2254(d)'s] standard is difficult to meet, that is because it was meant to be.").

Both the Eleventh Circuit and the Supreme Court broadly interpret what is meant by an "adjudication on the merits." Childers v. Floyd, 642 F.3d 953, 967-68 (11th Cir. 2011).  Thus, a state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits that warrants deference by a federal court.  Id.; see also Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008).  Indeed, "unless the state court clearly states that its decision was based solely

on a state procedural rule [the Court] will presume that the state court has rendered an adjudication on the merits when the petitioner's claim 'is the same claim rejected' by the court." Childers v. Floyd, 642 F.3d at 969 (quoting Early v. Packer, 537 U.S. 3, 8 (2002)).

"A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of [the United States Supreme] Court." Thaler v. Haynes, ___ U.S. ___, 130 S. Ct. 1171, 1173 (2010); see also Carey v. Musladin, 549 U.S. 70, 74 (2006)(citing Williams v. Taylor, 529 U.S. 362, 412 (2000))(recognizing "[c]learly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision). "A state court decision involves an unreasonable application of federal law when it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case, or when it unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Ponticelli v. Sec'y, Fla. Dep't of Corr., 690 F.3d 1271, 1291 (11th Cir. 2012)(internal quotations and citations omitted). The "unreasonable application" inquiry requires the Court to conduct the two-step analysis set forth in Harrington v. Richter, 131 S. Ct. at 770. First, the Court determines what

arguments or theories support the state court decision; and second, the Court must determine whether "fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior" Supreme Court decision. Id. (citations omitted).

### III. Findings of Fact and Conclusions of Law

#### A. Cognizable Claims

Respondent initially asserts that Grounds One, Two, and Three are not cognizable in this § 2254 action because the grounds concern only matters of state law (i.e., sufficiency of the evidence under Florida law). Response at 13, 25, 34. The Supreme Court has recognized, however, that a state prisoner's claim that the evidence in support of his conviction was insufficient to have led a rational trier of fact to find him guilty beyond a reasonable doubt constitutes a federal constitutional claim that is cognizable in a federal habeas proceeding, "assuming that state remedies have been exhausted, and that no independent and adequate state ground stands as a bar." Jackson v. Virginia, 443 U.S. 307, 321 (1979) (internal citations omitted). All three grounds asserted by Petitioner in the § 2254 Petition relate to the sufficiency of the evidence to convict him of second-degree murder. The Court finds that all three grounds are cognizable in a § 2254 proceeding.

#### B. Exhaustion of Cognizable Claims

Respondent also argues that the claims, even if cognizable, were not properly exhausted before the State courts because Petitioner failed to alert the State courts to the federal constitutional dimension of his claims. See Response at 13, 25, 34. Consequently, Respondent argues, the claims are now procedurally defaulted under Florida law. Id.

Petitioner raised Grounds One, Two, and Three in the Florida appellate court in his brief on direct appeal. See Exh. 2. The appellate court *per curiam* affirmed Petitioner's conviction and sentence. Exh. 3. "Under the [In re] Winship [397 U.S. 358 (1970)] decision, it is clear that a state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt has stated a federal constitutional claim." Jackson, 443 U.S. at 321. The Court finds that all three claims were properly exhausted. McKinzie v. Sec'y, Dep't of Corr., 265 F. App'x 858 (11th Cir. 2008); Mulnix v. Sec'y for Dep't of Corr., 254 F. App'x 763, 764 (11th Cir. 2007).

**C. Review of the Merits**

After full review, the Petition is denied. Petitioner is not entitled to habeas relief because the State court's rejection of his sufficiency of the evidence claims did not result in a decision that was "contrary to, or involved an unreasonable application of" United States Supreme Court precedent, or "in a decision that was

based on an unreasonable determination of the facts in light of the evidence presented" in the State court.

The Due Process Clause of the Fourteenth Amendment requires the state to prove each element of the offense charged beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. at 318-319. State law establishes the substantive elements of the criminal offense. Coleman v. Johnson, 566 U.S. ___, 132 S. Ct. 2060, 2064 (2012); Garcia v. Perringer, 878 F.2d 360, 362 (11th Cir. 1989)(citations omitted). Here, Florida law defines second degree murder as:

> The unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without premeditated design to effect the death of any particular individual is murder in the second degree. . . .

Section 782.04(2), Florida Statutes (2003). The minimum amount of evidence that the Due Process Clause requires to prove that offense is "purely a matter of federal law." Coleman, 132 S. Ct. at 2064.

Under this federal law, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319 (quotations omitted). See also Coleman, 132 S. Ct. at 2064. As the Supreme Court explained:

> We have made clear that Jackson claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. And second, on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable.

Coleman, 132 S. Ct. at 2062 (internal citations and quotation marks omitted.) The Court further explained that after a state jury is convinced by the evidence, the only question under Jackson is "whether the finding was so insupportable as to fall below the threshold of bare rationality." Id. at 2065. The determination of the state court of last review is entitled to considerable deference under AEDPA. Id.

A review of the record confirms that sufficient evidence supported the State court's denial of Petitioner's motion for judgment of acquittal on second degree murder and the appellate court's order *per curiam* affirming Petitioner's conviction. The evidence "was not nearly sparse enough to sustain a due process challenge under Jackson." Coleman, 132 S. Ct. at 2065.

Several witnesses testified that Eskridge and the victim were drinking and involved in a fistfight just prior to the murder.

Exh. 4, Vol. 4 at 193-98, 258-261; Vol. 5 at 332, 336.  One witness, Monica Maloney, the victim's fiancé, heard Eskridge say he was going to kill the victim just before he was stabbed to death.  Exh. 4, Vol. 4 at 199.  Eskridge was also seen trying to leave the resident with knives from his kitchen in his hand immediately before the murder occurred.  Exh. 4, Vol. 5 at 338-339.  Another witness, Joshua Dies testified that Eskridge was really angry and using a lot of fighting words and said, "I'm going to kill him, I'm going to kill him."  Exh. 4, Vol. 5 at 339.  Eskridge was seen leaving the residence in his car and starting another altercation with the victim a few minutes later.  Monica Maloney observed Eskridge pull up in a car, jump out, and then next thing she knew, the victim was on the ground.  Exh. 4, Vol. 6 at 450.  Ms. Maloney heard Eskridge say to the victim, "I'm going to kill you" twice and then saw Eskridge push the victim.  The victim fell and died very rapidly from the stab wounds he received.  Exh. 4, Vol. 4 at 199-200.

Although Monica did not actually see Eskridge stab the victim from her vantage point, no one else was present other the Eskridge and Monica when the murder took place.  Exh. 4, Vol. 4 at 229-30, 243.  Right after Eskridge pushed the victim, the victim's face drained, no expression, like he was in a daze.  Exh. 4, Vol. 4 200-201, 239-40.  The victim took a step backward and fell with his head hitting the grass.  The victim was unable to speak and

was laying spread eagle starting up at the sky, motionless. Eskridge fled the scene. Monica testified that she shouted at the victim to talk to her, but he just stared blankly and did not move at all. Exh. 4, Vol. 4 at 201-02.

Right after the murder, Eskridge returned to his house, disheveled, and witnesses heard Eskridge making incriminatory statements such as: "That's what you get for jumping me in my own house"; "The bastard deserved to be stabbed"; I should have cut his [expletive] nuts off"; "I took care of it"; "I did something stupid." Exh. 4, Vol. 5 at 401. Additionally, officers at the scene heard Petitioner make the statements that it was his house and he was trying to protect it, and "the same thing would have happened in the Bronx, a man has a right to defend himself." Exh. 4, Vol. 6 at 510-513.

Deputy Nelson testified that he was at the victim's body for 10 to 15 seconds to check for a pulse when he saw a suspect (Eskridge) walking away from the scene. Eskridge looked at the deputy, then turned away suddenly, and began walking away quickly. The deputy noticed blood on Eskridge's left shirt sleeve and the back of his shirt so he took off running after him and told Eskridge to stop, but Eskridge ignored him and continued towards his residence. Exh. 4, Vol. 6 at 431-432.

Although Petitioner contends that Monica Maloney confessed to the stabbing, the record shows that Monica did not confess, but

merely blamed herself because the victim would never have been at the bar, if it was not for her.  Exh. 4, Vol. 7 at 624-625.  Officer Smith specifically testified that Monica never confessed to stabbing the victim when she said it was "all her fault."  Exh. 4, Vol. 6 at 450.

Based on all the facts presented, the jury could have reasonably concluded that Petitioner stabbed the victim with a knife (an act that is imminently dangerous), with a depraved mind, without regard for human life.  And, viewing the evidence in the light most favorable to the state, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Jackson, 443 U.S. at 319.  No due process violation has been established.

ACCORDINGLY, it is hereby

**ORDERED:**

1.   The Florida Attorney General is dismissed from this action.

2.   The Petition for Writ of Habeas Corpus (Doc. #1) is **DENIED** on the merits.

3.   The Clerk of Court shall terminate any pending motions, enter judgment accordingly, and close this case.

**CERTIFICATE OF APPEALABILITY AND**

**LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED**

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability on either petition. A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Harbison v. Bell, 556 U.S. 180, 184 (2009). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) or, that "the issues presented were adequate to deserve encouragement to proceed further", Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003)(citations and internal quotation marks omitted). Petitioner has not made the requisite showing in these circumstances. Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE** and **ORDERED** in Fort Myers, Florida on this   18th   day of March, 2015.

_____
JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

SA: alr; Copies: All Parties of Record